## Thewlis *v.* Fenton, Appellant.

*Will—Devise—Description of real estate.*

Testator by deed acquired in 1869 two lots of ground, one fronting on A street and the other on B street.   These lots were adjacent, and formed an L.   In 1871, testator acquired another lot on A street adjacent to the first lot on A street, and extending in depth to the B street lot. In 1878 testator made his will by which he charged the payment of an annuity for his mother upon "the two properties on the southwest side of A street conveyed to me" in 1869 and 1871.   In another clause he gave to his wife for life "my two properties hereinbefore mentioned," subject to the annuity for his mother.   By another clause he gave and devised to his daughter and his adopted daughter "my said two before mentioned properties," after the termination of the wife's life estate.   At the time the will was made a building was erected on the B street lot, and two on the A street lots.   These two buildings were immediately contiguous to each other, and both of them extended over on the B street lot two feet and two inches.   *Held,* that testator intended to charge all three of the lots with the annuity to his mother, and to devise them as one property to his daughter and his adopted daughter.

Argued Jan. 15, 1909.   Appeal, No. 279, Jan. T., 1908, by plaintiff, from judgment of C. P. No. 4, Phila. Co., March T.,

1908, No. 4,163, for plaintiff on case stated in suit of Theodosia Thewlis v. Eliza Fenton. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Case stated to determine title to real estate.

WILLSON, P. J., filed the following opinion:

We think it possible, without going into a minute statement of the facts and the dimensions of lots of ground, to set out the essential matters involved in this case so that our reasons for disposing of it as we do will clearly appear.

By a conveyance dated March 8, 1869, John W. Thewlis acquired title to two lots of ground, one fronting on Pulaski avenue and the other on Linden street. These taken together, inclosed on two sides another piece of ground situated at the corner of those streets, and this belonged to Jane Thewlis, the wife of John W. Thewlis.

The Linden street lot of the latter extended about 103 feet in depth, and his Pulaski avenue lot had a depth extending to the line of that on Linden street. Subsequently, by conveyance dated November 8, 1871, John W. Thewlis took title to another lot of ground on Pulaski avenue adjacent to that previously mentioned, and extending in depth to the said Linden street lot.

In the year 1878, John W. Thewlis made and executed a will, in the second clause of which he bequeathed to his mother for life the sum of $104 annually, and charged the payment of this annuity upon "the two properties on the southwest side of · Pulaski avenue . . . . conveyed to me . . . . by deeds dated March 8th, A. D. 1869, and November 8th, A. D. 1871." In the third clause of the will he gave his wife Jane, for life, "my two properties hereinbefore mentioned," subject to the said annuity. By the fourth clause he gave and devised to his daughter, Eliza Fenton, the defendant, and to his "adopted daughter, Theodosia Thewlis," the plaintiff, "my said two before-mentioned properties" and after the termination of the life estate before described. This will, together with a codicil,

which, however, does not have any relation to the present case, was admitted to probate in 1904.

At the time when the will was made a three-story brick house had been erected on the Linden street lot, and two others of like character, one on each of the Pulaski avenue lots, had been constructed. These two buildings last referred to were immediately contiguous to each other, and both of them extended over on the Linden street lot two feet and two inches. The building erected on the Pulaski avenue lot first acquired also extended five feet into the other Pulaski avenue lot.

After the will was made, and prior also to the making of the codicil in 1904, Thewlis had acquired other real estate. This, with the properties already described, were assessed for the year 1904 for about $40,000. None of this newly acquired real estate was specifically devised by the terms of the codicil, and the executors named therein were given full power to sell all the testator's real estate.

Thewlis died in 1904, after the death of his mother, and leaving to survive him his wife and his daughter and his adopted daughter, the last-named two being the parties to this action.

The foregoing statement will show how the question at issue arises. It will be observed that by the provisions of the will there was a devise to the plaintiff and defendant, as tenants in common, of the "said two before-mentioned properties," and those properties were previously in the will described as "situate on the southwest side of Pulaski avenue," and as having been conveyed by the deeds of the certain dates before stated in this opinion.

There is in the will no express mention of the Linden or Penn (as it is now called) street property. Nevertheless, the plaintiff claims that the devise to her and to the defendant was intended to cover that property as well as the other two which physically front on Pulaski avenue. The claim of the defendant is that the testator died intestate as to what is called the Linden or Penn street lot.

The whole controversy is embraced in the two opposing claims as just stated.

The question thus raised must be settled by the exercise of

a sound judgment, in view of all the circumstances of the case, as to what the testator meant to cover by his description of the property devised. There is no rule of law specially applicable to the case to which we can refer and say that it should control our disposition of it. The fact that, if the defendant's theory is correct, the testator would have died intestate as to the property in dispute, may help somewhat to a proper solution of the question. Undoubtedly, it is natural to suppose that when Thewlis was engaged in preparing for a disposition of his property after his death, he would have embraced the whole of the property in his directions.

In the particular case in hand, this circumstance ought perhaps to have considerable weight, for the reason that the testator appears to have had his whole family in mind, and to have made careful discriminating provisions for their benefit. Apparently, also, he put his daughter and his adopted daughter upon the same plane of merit. Besides, the property in dispute was so physically related to the other lots, about which there is no dispute, that the testator may well have thought that he was disposing of his entire real property by the language employed by him.

At the same time, it must be conceded that the inferences to be drawn from the absence of any residuary clause are not inflexible, however much they may aid the mind in reaching a conclusion upon other grounds.

We must, therefore, look to such other features of the case as are presented to us to see if possible whether anything appears of sufficient significance to enable us to arrive at a fair, sound judgment as to just what the testator meant by his description of the property. We find, then, that while it is true that he acquired the properties on Pulaski avenue and on Linden street as three separate lots, he practically treated them as one piece of property. The fact that in configuration the lot, taken as a whole, resembled the letter "L" would amount to little one way or the other.

There are well-known instances in this city of properties so shaped, that are described as situated on one only of the two streets upon which one or the other leg of the lot faces.

What we ought to try to reach is the thought of the testator —what he regarded the two Pulaski avenue properties as being. What was it that he intended to charge with the payment of the annuity given to his mother? Did he mean to put the burden upon two lots that had buildings upon them, which buildings extended over upon the so-called Linden street lot, and might therefore be very uncertain sources of income, or did he mean to place the charge upon the entire property which, in the erection of buildings, he had made use of as a unit, and which presumably was an open, undivided tract of land to the eye? It seems natural to answer this question in a way that would tend to carry out most effectually the testator's purposes as they appear in his will. It is undoubtedly true that we have no right to make a will for him by a forced interpretation, but we have the right, and it is our duty if possible to give such effect to the words used by him as will carry out what we believe to have been his intentions.

On the whole case, we have reached the conclusion that the testator in his will treated the entire property which he had acquired in 1869 and 1871 as a unit, just as he had dealt with it in the erection of buildings, and that he naturally described it with reference to the frontage on Pulaski avenue, although a portion of the lot faced upon Linden street. This we say, notwithstanding the will, which was evidently drawn by a lawyer, refers to two lots on the former street and to the conveyances under which they were acquired. He might easily have thought of these properties as embracing other contiguous ground that he had consolidated with them. Any other construction would seem to defeat the manifest, and one of the main, purposes of his will.

Coupling the circumstances referred to with the absence of a residuary clause, we regard ourselves as justified in holding that the plaintiff and defendant are tenants in common of the property called the Linden or Penn street lot. Such a disposition of the case is not only legal, but it is eminently equitable. The defendant may well be satisfied with the large estate which has come to her under the intestate law.

Judgment will be entered in favor of the plaintiff.

*Error assigned* was the judgment of the court.

*Joseph H. Taulane,* of *White, White & Taulane,* with him *Ernest E. Prevost,* for appellant.

*N. Dubois Miller,* of *Biddle, Paul, Miller & Jayne,* with him, *H. Alan Dawson,* for appellee.

PER CURIAM, March 8, 1909:
The judgment is affirmed on the opinion of the learned president judge of the common pleas.